**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

CRUZ RODRIGO GARCIA-ESPINOZA,

    Petitioner,

    v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al*.,

    Respondents.[1]

Case No. 3:26-cv-00294-RFB-CSD

**ORDER GRANTING WRIT OF HABEAS CORPUS**

    Before the Court is Petitioner Cruz Rodrigo Garcia-Espinoza's Petition for Writ of Habeas Corpus, which he filed pursuant to 28 U.S.C. § 2241. See generally ECF No. 1-1 [hereinafter, "Petition"]. Through it, he challenges the lawfulness of his ongoing detention in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents are detaining Petitioner without providing an opportunity for release on bond, as they assert that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). See ECF No. 6 at 1–2 [hereinafter, "Opposition"]. Petitioner asserts that his detention pursuant to § 1225(b)(2)(A) violates the Immigration and Nationality Act ("INA") and this Court's grant of Parital Summary Judgment in Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026). See ECF No. 9 at 3–5 [hereinafter, "Traverse"].

    Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioner's detention. See generally Opposition. This Court is well acquainted with Respondents' interpretation of the INA, as the Court has repeatedly rejected it as unlawful. See, e.g., Jacobo

---

[1] Because of Petitioner's recent transfer from Washoe County Detention Facility to Nevada Southern Detention Center ("NSDC"), see ECF No. 11 (Response to the Court's May 8, 2026 Order (ECF No. 10)), NSDC Warden John Mattos is substituted for Respondent Darin Balaam.

Ramirez, 2026 WL 879799, at *34–35 (collecting cases). In fact, the Court recently granted relief on this precise issue in a related class-action, which is inextricably intertwined with this case. Specifically, the Court: (i.) declared that Respondents' interpretation is wrong; (ii.) declared that members of the Jacobo Ramirez Class are entitled to a bond hearing under 8 U.S.C. § 1226(a); and (iii.) vacated Respondents' related policies—namely, the Board of Immigration Appeals's decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). See Jacobo Ramirez, 2026 WL 879799, at *33–34.

As discussed below, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Given the government's violations, the Court finds the appropriate remedy is a prompt bond hearing where the government bears the burden of justifying Petitioner's detention under § 1226(a) by clear and convincing evidence; alternatively, Respondents may immediately release him from custody.

## I.       CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Id. at *4 (citation omitted). Moreover, Respondents concede Petitioner is a Class Member. Reynoso v. Giurbino, 462 F.3d 1099, 1110 (9th Cir. 2006) (the government "is bound by its concessions").

Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court too finds that Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. See Petition at 3. Second,

he is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States District of Nevada. See ECF No. 6-1 at 5 (Notice to Appear). Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See id. Fourth, Respondents are detaining him pursuant to § 1225(b)(2)(A); in other words, the government is not asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opposition at 1–2. Fifth, Petitioner was most recently arrested well within our country's interior— and long after he entered the United States. See ECF No. 6-1 at 3 (Form I-213). In sum, Petitioner clearly falls within the Jacobo Ramirez Class, and he is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief.").

Therefore, Petitioner's ongoing detention is unlawful, as the government is improperly subjecting him to mandatory detention under § 1225(b)(2)(A) in violation of this Court's declaratory judgment and vacatur, as well as the INA. See Jacobo Ramirez, 2026 WL 879799, at *33–34. The Court thus finds, in accordance with its decision in Jacobo Ramirez, Petitioner's detention is instead governed by 8 U.S.C. § 1226(a) and its implementing regulations.

## II.    REMEDY

Based on the record before it, the Court finds Petitioner has been subjected to unlawful arrest and detention in violation of his statutory rights and this Court's declaratory judgment and vacatur. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (alterations in original) (citations omitted). Petitioner requests, inter alia, the Court "[o]rder Respondents to release Petitioner unless they provide a bond hearing under 8 U.S.C. § 1226(a) before a neutral arbiter where the Respondents bear the burden of justifying each Petitioner's detention by clear and convincing evidence[.]" Traverse at 5. For the following reasons, the Court finds that ordering Respondents to provide Petitioner a bond hearing, under the standard proffered by Petitioner, within three days or release him from custody is the appropriate equitable remedy in this case.

First, the Court finds that Petitioner was arrested and detained without a warrant or initial custody determination pursuant to 8 C.F.R. § 236.1, in violation of his statutory rights and the Court's declaratory judgment and vacatur. Despite being ordered to do so by this Court, Respondents failed to produce alongside their Return an "I-200 Warrant for Arrest of Alien" or "Form I-286 Initial Custody Determination," or in the alternative, "certify" that those documents were not in their possession, custody, or control. See Order to Show Cause ("OSC") at 2–3, ECF No. 4. The Court finds Respondents' failure to produce evidence of an arrest warrant and individualized custody determination, without so much as an acknowledgement or explanation, in the face of a Court order, is a concession that no such records exist as to Petitioner, i.e., he was detained without the procedures he was entitled to under 8 U.S.C. § 1226. See Jacobo Ramirez, 2026 WL 879799, at *31. ("The Court issues a classwide declaratory judgment that Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

Furthermore, as a result of being detained under § 1225(b)(2)(A), Petitioner was deprived of notice and opportunity to challenge the government's basis for his arrest and detention. This is in stark contrast to the procedural protections available under the mandatory detention provisions of the INA that apply to noncitizens liker Petitioner, i.e., those arrested within the interior of the country and not while arriving[2] at its borders. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)" where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory

---

[2] ICE's arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." See Jacobo Ramirez, 2026 WL 879799, at *8 (quoting the July 8, 2025 internal ICE Memo).

detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)).

Second, the Court considers Federal Respondents' continued enforcement of detention policies that the Court has found, in a binding judgment, to be unlawful. Here, Petitioner was arrested without an initial custody determination in February 2026, pursuant to ICE's internal policy instructing officers not to issue custody determinations to undocumented noncitizens apprehended within the country, "because such initial custody determinations are only required under 8 U.S.C. § 1226 and its implementing regulations." Jacobo Ramirez, 2026 WL 879799, at *8 (citing the July 8, 2025 ICE Memo "Interim Guidance Regarding Detention Authority for Applicants for Admission" by Acting ICE Director Todd Lyons, which outlined "the official formal nationwide policy of DHS and DOJ"). This Court found the July 8 ICE Memo unlawful under the Administrative Procedure Act ("APA") and vacated it accordingly on March 30, 2026. See id. at *33. Well over thirty days have passed, and Federal Respondents have taken no action to cure their unlawful detention of Petitioner by providing him an initial custody determination and the opportunity to seek a bond hearing before an immigration judge ("IJ").

Indeed, since the Court's classwide judgment in Jacobo-Ramirez, Federal Respondents have not been deterred from continuing to detain Class Members like Petitioner without appropriate custody determinations, warrants, or other statutory requirements, all while "repeatedly—and increasingly—violating this Court's orders." See, e.g., Jimenez Gomez v. Dep't Homeland Sec., *et al.*, Case No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *1–2 (D. Nev. Apr. 29, 2026) (collecting examples of Federal Respondents violating this Court's explicit orders, which include, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners, ignoring Court-ordered deadlines, and unlawfully imposing release conditions). "By violating this Court's orders, Respondents are undermining their credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners." Id. at *2.

For these reasons, the Court is not convinced that Respondents' unlawful conduct will cease in the aftermath of this Order. Therefore, the Court finds that it must adopt equitable measures to remedy Petitioner's months of unlawful detention and ensure Respondents—

including the immigration courts which operate under Respondents' authority—provide Petitioner the procedures he is entitled to by statute, regulation, and the Court's classwide judgment going forward. Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings).

Here, the appropriate remedy is a bond hearing where the burden to justify Petitioner's detention is shifted to the government. Specifically, the Court orders Respondents to conduct a bond hearing for Petitioner under § 1226(a), and its implementing regulations, wherein the government must prove, *by clear and convincing evidence*, that Petitioner's civil detention is justified by an individualized, constitutionally recognized interest—*e.g.*, that his detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings. Cf. Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that, "[g]iven the substantial liberty interest at stake[,] . . . the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond," where a petitioner was in prolonged immigration detention while the Ninth Circuit reviewed his removal order), abrogation on statutory grounds recognized by Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022); Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community" in the context of prolonged detention under 8 U.S.C. § 1226(c)). While the Court does not take this step lightly, it finds it is necessary because of the violations perpetrated by Respondents heretofore.

Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," and considering the injuries Petitioner has suffered and continues to suffer due to Respondents' ongoing enforcement of unlawful detention policies, despite this Court's declaratory judgment and vacatur, the Court also orders Respondents provide this bond hearing *promptly*—*i.e.*, no later than **May 20, 2026**. If they do not supply a bond hearing by this date, then Respondents must immediately release Petitioner from custody on his own recognizance

with no substantial constraints on his liberty.

### III.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must provide Petitioner with a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a) by **May 20, 2026**. This bond hearing must comply with all the procedural safeguards outlined herein. See supra Part II. Namely, the government bears the burden of justifying Petitioner's detention by clear and convincing evidence.

**IT IS FURTHER ORDERED** the immigration court must further create a contemporaneous record of the bond hearing that is available to Petitioner upon request, see Singh, 638 F.3d at 1208, and that is available to this Court so that it can ensure the immigration court's compliance with this Order.

**IT IS FURTHER ORDERED** that if bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from detention. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond through ICE payment portals, and, therefore, **IT IS FURTHER ORDERED** that Petitioner be afforded until **June 22, 2026** to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as the Court has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. See generally Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **May 20, 2026**, Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on his own recognizance. This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) after a constitutionally adequate bond hearing. To that end, **IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the Parties shall file a joint status report by **May 14, 2026**. The status report shall detail whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial. If bond was granted, or the bond hearing has not occurred, the status report shall (i.) confirm the date and time of Petitioner's release from detention in compliance with this Order and (ii.) confirm Respondents' compliance with this Court's directives concerning conditions of release.

**IT IS FURTHER ORDERED**, if bond is granted, or the bond hearing has not occurred within the prescribed time frame, Respondents must inform Petitioner's counsel of the date, time, and location of Petitioner's release at least two hours in advance of said release. Respondents must also return Petitioner's personal property, including any personal identification document and any employment authorization document, upon release.

**IT IS FURTHER ORDERED**, if bond is denied, Federal Respondents must (1) **ATTACH** the order of the immigration court to the joint status report and (2) **PROVIDE** the contemporaneous record of the bond hearing to Petitioner's counsel upon request.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** May 15, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 8 -